# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:10-CR-51-TLS |
| | ) | |
| SHAWN HAGLER | ) | |

**OPINION & ORDER**

The Defendant, Shawn Hagler, is charged with committing armed bank robbery or aiding and abetting the same. The bank robbery occurred on August 15, 2000. The Defendant was indicted on July 28, 2010, nearly ten years later, along with his brother William Hagler. The Defendant has moved to dismiss [ECF No. 182] the Indictment on grounds that it is barred by the five-year statute of limitations, 18 U.S.C. § 3282. The Government argues that, pursuant to 18 U.S.C. § 3297, the statute of limitations was tolled until such time as the Defendant was implicated by DNA testing.

The tolling statute at issue, 18 U.S.C. § 3297, provides:

> In a case in which DNA testing implicates an identified person in the commission of a felony, no statute of limitations that would otherwise preclude prosecution of the offense shall preclude such prosecution until a period of time following the implication of the person by DNA testing has elapsed that is equal to the otherwise applicable limitation period.

The parties dispute the date when the Defendant was implicated by DNA testing. The Defendant argues that he was implicated as early as 2002 when the sample of DNA taken from a face mask that was believed to have been worn by one of the bank robbers began producing matches in a DNA databank. The Government counters that these matches, which were based on only 8 loci (sites or locations in the DNA) and thus resulted in matches to more than one individual, were not sufficient to implicate the Defendant. Rather, it was not until 2009, when the DNA sample

from the mask was retested with improved technology that a positive match confirmed that the Defendant was the contributor of that sample.

The Defendant's brother and Co-defendant, William Hagler, lodged a similar statute of limitations issue in *United States of America v. William Hagler*, 1:09–CR-104-WCL.[1] In that case, an evidentiary hearing was held on March 29, 2010, and Judge William C. Lee issued an Opinion and Order denying William's motion to dismiss. *See United States v. Hagler*, 2010 WL 3927484 (N.D. Ind. Oct. 4, 2010). During the evidentiary hearing, Lisa Black, a DNA Supervisor for the Indiana State Police Laboratories at Lowell and Fort Wayne, Indiana, testified. In deciding the Defendant's Motion to Dismiss, the Court will refer to Black's testimony, as well as to Judge Lee's opinion.

## BACKGROUND

On May 18, 2001, DNA testing of a sample from the yellow mask returned a "mixed profile," indicating that at least two different persons contributed DNA. The mixed DNA profile was uploaded to the state DNA database on May 25. However, the results were not eligible to be uploaded to the national DNA database because the testing methodology used by the Indiana State Police Laboratory, called Powerplex 1.1, only tested 8 loci on the DNA molecule. The national database required that 13 loci be attempted with no less than results for 10 STR loci

---

[1] Both William and Shawn were first indicted on October 28, 2009, for the 2000 bank robbery. However, the 2009 case was dismissed without prejudice on speedy trial grounds after the Supreme Court decided *United States v. Bloate*, 130 S. Ct. 1345 (2010). *See United States v. Hagler*, 1:09-CR-104-WCL (filed N.D. Ind. Oct. 28, 2009) (6-28-10 Opinion and Order, ECF No. 37). After the dismissal, the Government filed a new indictment against William and Shawn Hagler in cause number 1:10-CR-51. Willam Hagler proceeded to jury trial before Judge William C. Lee, and a guilty verdict was returned on December 16, 2010. On June 6, 2011, the case against Shawn Hagler was reassigned from Judge Lee to the undersigned for all further proceedings.

successfully obtained. The mask profile remained in the database collecting hits until November 10, 2007, when the State Administrator removed the mask profile from the state database because the low number of loci tested did not produce sufficient discriminating value to pick out one individual. Although the State Administrator considered the number of hits to be excessive, the current record does not indicate how many hits were collected, the persons they matched, or the dates of the hits.[2]

On July 23, 2002, the Defendant's DNA profile was entered in to the state database as a result of a state felony conviction. This is the same date that William Hagler's DNA profile was entered. Also in 2002, the Indiana State Police updated their technology for DNA testing. According to Black, this testing "gave us all 16 areas of DNA molecules," when previously only 8 areas of DNA molecules were available. (Hr'g Tr. 39.) Despite this update in technology, the State Police Lab did not begin to re-analyze previously analyzed samples until 2008. By this time, the Lab had again upgraded its DNA technology and had also received grant money to analyze cold cases. Before 2008, back logs on current cases and inadequate staffing prevented retesting. On December 3, 2008, Black re-examined the mask using the more sensitive technology. As a result, on January 6, 2009, an 11 loci profile for the mask was uploaded into the system, which still demonstrated a mixed profile, but isolated a major contributor. On January 9, 2009, a match report generated a "hit" for the major contributor showing a preliminary match to the Defendant, Shawn Hagler. Black completed a confirmation process on February 13 and issued a report on February 20. To further confirm the results, the Lab received a known DNA

---

[2] Black testified that she did not have this information, but perhaps the information could be obtained from the State Administrator.

sample from the Defendant. On December 15, 2009, Black confirmed that the Defendant was the contributor of the major DNA profile from the mask.

**ANALYSIS**

The Government and the Defendant's disagreement regarding when the statute of limitations expires in this case centers around when "DNA testing implicate[d]" the Defendant. *See* 18 U.S.C. § 3297. The Government says the Defendant was implicated on December 15, 2009.[3] The Defendant puts the date much earlier, sometime in 2002. Judge Lee, in the case against William Hagler, found no ambiguity in Congress's use of the phrase "implicates an identified individual." He wrote:

> The *Merriam Webster* online dictionary defines "implicate" as "to bring into intimate or incriminating connection" such as "evidence that implicates him in the bombing." A search of other common dictionary references have similar definitions, *see Encarta World English Dictionary* (implicate means "to show connection of somebody with something: to show that somebody or something played a part in or is connected to an activity such as a crime; *Oxford English Dictionary Online* (implicate means" to show (someone) to be involved in a crime: police claims implicated him in many more killings).
> "Identified" is defined in the same three above sources as follows: *Merriam-Webster Dictionary Online*: "to establish the identity of;" *Encarta World English Dictionary*: "to recognize somebody or something and to be able to say who or what he, she, or it is;" and *Oxford English Dictionary Online*: to identify someone/something with); associate someone) closely with; regard (someone) as having strong links with.
> Using the plain meanings of the above words, to "implicate an identified person" means to establish the identity of someone who played a part in a particular action such as a crime.

---

[3] It is unclear why the Government chooses December 15 instead of February 13 when Black completed the confirmation or on February 20 when she issued her report for the hit. In fact, the Government first indicted the Defendant for the bank robbery on October 28, 2009. In any event, if § 3297 acted to toll the statute of limitations until either the December or the February dates, the statute of limitations would not be a bar to prosecution.

4

2010 WL 3927484, at * 4–5. (Of course, the statute further clarifies that the identified person be implicated specifically in the "commission of a felony." 18 U.S.C. § 3297.) In William Hagler's case, Judge Lee had no reason to find an ambiguity in the statutory phrase; the initial DNA test that the State Lab performed did not result in any profile. It was not until 2009 that retesting with improved technology resulted in a useable profile that was entered in any database. Only then did the profile generate a match to William's DNA profile. Under these circumstances, William's only argument against the tolling effect of § 3297 was that he *could* have been implicated as an identified individual in 2002 when his DNA was entered into the system if the sample had been retested with the technology that was available in 2002. Judge Lee's reasoning, that the statute unambiguously provided that the statute of limitations for bank robbery was tolled until DNA testing identified William as a participant in the bank robbery, was inescapable.

The case against Shawn Hagler presents a different and more complicated scenario, one that highlights a potential ambiguity in the statute. For § 3297 to apply to an offense, the identified person must have been implicated in the crime by DNA testing. As this case reveals, there are varying degrees of implication and identification that can result from different DNA testing methodologies. It is undisputed that, in 2009, Black reported that there was a reasonable scientific certainty that the evidence sample from the mask and the Defendant's sample came from the same person. But what about the matches obtained to the 8-loci profile? Was the Defendant sufficiently implicated by DNA testing in 2002 if a matching profile identified him as a potential contributor but also identified others? Does it depend on how many other people were considered matches? In other words, how unique must the profile be and how conclusive must the match be to "implicate" a particular person in a crime? The plain language of the statute

5

simply does not reveal Congress's intent with regard to the level of certainly required. Thus, the Court must look to legislative history to determine the congressional intent underlying the statutory language. *See Blum v. Stenson*, 465 U.S. 886, 896 (1984) (Where "resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.")

Section 3297 was promulgated in 2004 as part of the Justice For All Act, which was intended to enhance the "rights and protections for all persons involved in the criminal justice system" through two avenues. First, the Act created "a new set of statutory victims' rights." Second, the Act set forth "a comprehensive DNA bill that seeks to ensure that the true offender is caught and convicted for the crime." H.R. Rep 108-711, 2004 WL 2348416, *1, 2005 U.S.C.C.A.N. 2274, 2275. As part of these goals, the Act intended to eliminate the problems of backlogs and the lack of up-to-date DNA testing technology by providing funding to states to improve their technology and allowing formula grants to states and units of local governments to analyze DNA samples on file. *Id.* Judge Lee noted this history, as well the testimony that Honorable Sarah V. Hart, Director, National Institute of Justice, United States Department of Justice offered during hearings held on June 17, 2003, before the Subcommittee on Crime, Terrorism, and Homeland Security Committee on the Judiciary in the United States House of Representative on the proposed Act. Noting that she specifically provided insight into the tolling provision, Judge Lee wrote:

> In discussing the issue, she outlined the traditional purposes of statutes of limitations:
>> A statute of limitations usually reflects a legislative judgment that the burden of prosecuting an old c rime may outweigh its benefits. It balances the need to prosecute serious crim es with concerns that a delayed prosecution may be unreliable given the passage of time and

faded memories. A statute of lim itations may also encourage law enforcement officials to investigate prom ptly suspected crim inal activity.

She then went on to discuss the necessity and purpose of the tolling legislation:

> Where, however, a prosecution is s upported by DNA evidence, imposing a statute of limitations does not serve these public interests. The dependability of DNA evidence does not diminish over time and it produces reliable verdicts years af ter the crime was committed. Likewise, the mechanical application of a fixed statute of limitations can bar a trial even where law enforcement officials have promptly investigated the crime and sought to use DNA evidence. Fo r these reasons, we have recom mended that the provisions governing t he time period for commencing prosecution in Federal cases be amended so as to toll the limitation period for prosecution in felony cases in which the perpetrator is identifed through DNA testing. This reform is necessary to realize the full value of the DNA technology in solving crimes and protecting the public from rapists, killers, and other serious offenders . . . .
> [W]e have recom mended remedial legislation to provide that, in felony cases in whic h the defendant is im plicated through DNA testing, the statute of limitations does not begin to run until the DNA identification occurs. Even where crim e scene DNA evidence is available, unavoidable delay may occur before the offender can be identified through DNA matching, if he is not convicted until years later for some other offense which results in a DNA samp le being taken and entry of his DNA profil into CODIS. The proposed tolling provision will help to ensure that prosecution will not be barred.
> See, http://judiciary.house.gov/legacy/hart071703.pdf at pages 15-17.

2010 WL 3927484, at * 6. Judge Lee concluded that Congress's intention was that the proposed tolling provision would apply in cases like William Hagler's, where the crime scene DNA evidence was available but the offender is only identified at some later date. *Id.* The court also recognized that William's true argument appeared to be that the statute of limitations should have started running in 2002 when the State Lab had the technology to retest the evidence and his DNA profile was in the database. Judge Lee reasoned that "while this argument has some appeal," there was no evidence suggesting that the State Lab or the government purposely

7

delayed the testing to manipulate the statute of limitations or permit evidence to run cold. *Id.* Rather, Indiana received grant money in 2008 (likely pursuant to the provisions of the Act) to retest samples with the updated technology, which was exactly what the Act intended states to do. Further, once DNA implicated William, the government promptly indicted him. *Id.*

Likewise, the problem here cannot be that the State did not retest the DNA sample from the mask until 2008. The legislative history acknowledges backlogs in DNA testing and a need to update technology. The Act anticipates that delays will occur in matching DNA crime scene evidence with DNA profiles in CODIS (Combined DNA Index System). The Act, and specifically the tolling provision, is an attempt to ensure that justice is still served despite these delays. The isolated issue for resolution by this Court is whether, under the Act, the Defendant was identified through DNA testing when the mask first began getting hits in the state database, or whether the Defendant was first identified in 2009 when the Defendant was the only confirmed match to the enhanced profile.

DNA is the genetic code unique to each individual. When the database tags someone as a match, they are arguably implicated to some degree, even if others are also implicated. However, until all other persons are eliminated as matches to a particular profile, they are not identified as the contributor of the DNA sample to a level of scientific certainty that is possible in the world of DNA testing, which is the specific area of crime analysis to which the tolling statute is directed. Although "implicate" does not typically connote the same certainty that words like "proves" or "establishes" imply, it is reasonable to assume that Congress shied away from such terms because even if a person is a match to the exclusion of all others, the presence of his DNA may have an innocent explanation. Proof comes after an indictment. The Court finds that

Congress reasonably intended that the level of implication required to toll the statute of limitations would be sufficiently certain to support bringing a charging instrument against that person and pursuing prosecution. Anything less would defeat the purpose of the tolling provision. The number of matches to the 8 loci mixed profile for the mask were considered so excessive by the State Administrator that the profile was removed from the database. Although this would not appear to meet the intended definition of implicate, the Court cannot make this determination without further evidence concerning the decision from the office of the State Administrator and the matches that were being generated before the sample was removed from the state database.

## CONCLUSION

For the reasons states above, the Court takes the Defendant's Motion to Dismiss [ECF No. 182] under advisement. The Court confirms the telephonic status conference set for Monday, October 24, 2011, at 11:30AM, at which time it will set this matter for an evidentiary hearing.

SO ORDERED on October 21, 2011.

                                                  s/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT