UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO. 1:10-CR-51 |
| ) | |
| WILLIAM HAGLER ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is Defendant, William Hagler's "Motion for New Trial and for the Inspection and Testing of Evidence within the control of the Government" [DE 256] filed on April 15, 2013. The Government responded on April 29, 2013 to which the Defendant replied on June 10, 2013. For the following reasons, the Motion will be DENIED.

## PROCEDURAL BACKGROUND

On June 29, 2010, a single count Criminal Complaint was filed against Hagler alleging a violation of 18 U.S.C. §2113(a) and (d) in connection with his participation in the attempted armed robbery of the National City Bank in Woodburn, Indiana on August 15, 2000. Thereafter, a single count Indictment was returned against Hagler and his brother, Shawn Hagler, charging them with a violation of 18 U.S.C. § 2118 in connection with their participation in the attempted armed robbery of the National City Bank in Woodburn, Indiana on August 15, 2000.

Hagler proceeded to trial and, on December 16, 2010, was convicted on the sole count of the Indictment. Thereafter, Hagler was sentenced to a term of imprisonment of 150 months. Hagler's conviction and corresponding sentence were recently affirmed by the Seventh Circuit Court of Appeals in *United States v. Hagler*, 700 F.3d 1091 (7th Cir. 2012). The present motion followed

wherein Hagler asserts that the existence of newly discovered evidence and the interests of justice require a new trial. More specifically, Hagler contends that an orange pumpkin mask recovered from the left rear seat of the getaway car contains non-Defendant hair, a fact which was not disclosed to him prior to his trial.[1]

Before going further, it is important to note that Hagler's brother, Shawn, is scheduled for trial in August, 2013. Riding on the coat tails of Shawn's defense, this is Hagler's second go-round at the DNA evidence in an attempt to obtain a new trial for himself. His first attempt post-trial involved Exhibits 29 (a gray sweatshirt) and 31 (black hooded sweatshirt) from his trial which the Government withdrew at the conclusion of Hagler's trial for additional DNA testing relating to Shawn's case. [DE 107] Thereafter, a new Certificate of Analysis was prepared relating to the analysis of Government's Exhibits 29 and 31. The examiner determined that as to the neck of the gray sweatshirt (Government's Exhibit 29; ISP Item number 5), there was a mixture of DNA present and no conclusion could be drawn as to whether or not Hagler was the contributor of that DNA. As to the samples taken from the black sweatshirt (Government's Exhibit 31 and ISP Item number 4) and other areas tested of the gray sweatshirt, the examiner concluded that there was an insufficient quantity of DNA for further analysis. Hagler contended that this evidence was newly-discovered and potentially exculpatory thereby entitling him to a new trial. The undersigned denied that motion and the Seventh Circuit affirmed. *Hagler*, 700 F.3d at 1101.

In the present motion, Hagler challenges hairs taken from a pumpkin mask found in the getaway car and asserts that the Government failed to disclose the existence of non-defendant human

---

[1]Hagler also initially asserted that the defendant's incarceration history was not produced and that this evidence would have permitted him to cross-examine a prosecution witness about the time frame for conversations she allegedly had with him. However, in his reply brief, the Defendant concedes that the his incarceration history was timely produced by the government prior to trial. [DE 268, footnote 1].

2

hair found on the mask. He contends that a new trial is warranted since he believes that had the existence of non-defendant human hair been disclosed to the jury, jurors would have had reasonable doubt as to his guilt.

Federal Rule of Criminal Procedure 33 authorizes the district court to vacate any judgment and grant a new trial if the interest of justice so requires. In the case of newly discovered evidence, "the interest of justice so requires" where evidence is discovered after trial, could not have been discovered sooner, is not cumulative, and would probably result in acquittal. *United States v. Reyes,* 542 F.3d 588, 595 (7th Cir.2008). Such a determination is completely within the Court's sound discretion. *United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir.1984)). However, the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" *United States v. Linwood,* 142 F.3d 418, 422 (7th Cir.1998) (quoting *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.1990)).

Hagler bears the burden of showing that the newly discovered evidence is both material, i.e. not merely cumulative or impeaching, and "would probably lead to an acquittal in the event of a retrial." *United States v. McGee,* 408 F.3d 966, 979 (7th Cir. 2005). He has done neither. Law enforcement officers retrieved an orange pumpkin mask from the left rear seat of the getaway vehicle. The pumpkin mask was designated "Item 11," and the hair recovered from the mask was labeled "Item 11B." The existence of Items 11 and 11B was known to Hagler well before his December 14, 2010 trial date, as Hagler's counsel acknowledges. Reply, at 1 (acknowledging that the existence of the human hairs appears to have been timely disclosed prior to trial). What Hagler now complains about is what he describes as the belated disclosure of the Certificate of Analysis dated May 14, 2001 which examines the DNA found on Item 11B. He contends that this certificate

3

was not disclosed until 6 days before trial and that it contains exculpatory evidence.

The Government states that it provided the May 14, 2001 Certificate of Analysis to Hagler on at least two occasions well in advance of trial. Specifically, the Government represents as follows:

> Item 11A and Item 11B were again referenced in an Indiana State Police Laboratory Certificate of Analysis dated May 24, 2001. That document was provided to Defendant's trial counsel as bates number 190-191 on August 11, 2010 and again as bates numbers 234-235 on September 16, 2010.

Gov't Resp. at 3. Hagler does not specifically dispute the above representation from the Government. But, more importantly, Hagler's characterization of what this Certificate of Analysis reveals is far from accurate or exculpatory, even if the Court concluded that it was belatedly disclosed. With respect to the hair from the pumpkin mask, the May 14, 2001 Certificate of Analysis states, "...the swabs and the hair from the pumpkin mask (items 11A and 11B) failed to demonstrate a sufficient quantity of DNA for further analysis." [DE 184, Exh. 2].[2] In essence, the laboratory failed to find enough DNA from Item 11B to further analyze the hair, thereby making the laboratory finding inconclusive. As this Court previously stated in the Opinion and Order resolving Hagler's first Motion for a New Trial, where similar findings were made by the State Police Laboratory with respect to DNA found on sweatshirts recovered from the getaway vehicle:

> DNA evidence that is inconclusive does not aid in Hagler's claim of innocence. Indeed, the definition of inconclusive evidence is that the evidence "does not resolve fully all doubts or questions" or "evidence leading to no conclusion or definite result." *See www.merriam-webster.com/dictionary/inconclusive.* Thus, at most, the evidence is cumulative of the other evidence Hagler presented at trial as to the absence of *more* physical evidence.

---

[2]It is worth noting that counsel did not attach a copy of the Certificate of Analysis to Hagler's motion despite characterizing the content of that certificate in the briefing as showing the existence of "non-defendant human hairs" found on Item 11B. That language does not appear anywhere within the May 14, 2001 Certificate of Analysis.

[DE 147, at 8].

The final hurdle Hagler has is that even if the Court found the above evidence somehow material to his case, it is difficult to conceive how this "newly discovered evidence" even if "belatedly disclosed" would have affected the verdict. "A showing of prejudice under the fourth prong of the test requires an 'actual probability that an acquittal would have resulted if the evidence had been available.' " *United States v. Gonzalez–Gonzalez,* 258 F.3d 16, 20 (1st Cir.2001). This is a difficult prong to meet especially where there is a substantial amount of other evidence supporting the moving defendant's conviction. *Id.* Indeed, the Seventh Circuit, in affirming Hagler's conviction as well as this Court's denial of his first new trial motion, reiterated what this Court has said all along:

> Hagler's DNA and fingerprints were strong proof of his guilt. The mere fact that his DNA was not found in *greater abundance* does little to undermine this proof. Thus, we do not think that it would probably result in acquittal if presented to a jury, and we certainly do not think that the district court abused its discretion in so holding.

*Hagler,* 700 F.3d at 1101. Accordingly, the Court concludes that Hagler has not demonstrated a likelihood of acquittal had the alleged newly discovered DNA evidence (or absence of it) been known to the jury. The "Motion for a New Trial and for the Inspection and Testing of Evidence within the control of the Government" [DE 256] is DENIED.

Entered: This 30th day of July, 2013

s/ William C. Lee
United States District Court